COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Athey and Callins
Argued at Virginia Beach, Virginia

PUBLISHED

ROY QUIONNE ARTIS

v.        Record No. 1407-21-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE DOMINIQUE A. CALLINS
JANUARY 17, 2023

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
John W. Brown, Judge

Kelsey Bulger, Senior Assistant Public Defender (Virginia Indigent
Defense Commission, on briefs), for appellant.

Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Roy Quionne Artis appeals his conviction for possession of marijuana under the

now-repealed Code § 18.2-250.1.  Artis contends that his conviction is void ab initio because

Code § 18.2-250.1 was repealed prior to his conviction, and he was therefore convicted for

conduct that was no longer a crime.  Artis also asserts that the trial court erred by imposing an

enhanced sentence of twelve months' imprisonment and a $2,500 fine under the recidivist

provision in Code § 18.2-250.1 because his indictment did not charge him with a second or

subsequent offense under that statute, nor was his prior conviction proven at trial to the jury.  For

the following reasons, we affirm Artis's conviction, but we vacate the sentencing order and

remand for resentencing.

BACKGROUND

The material facts of the case are not in dispute.  On November 4, 2020, Artis was

indicted in the Circuit Court of the City of Chesapeake for possession with intent to distribute

marijuana, in violation of Code § 18.2-248.1.  The indictment charged that Artis "[o]n or about February 25, 2020, did unlawfully and feloniously sell, give, distribute, or possess with intent to sell, give, or distribute more than one-half ounce but less than five pounds of Marijuana in violation of § 18.2-248.1 of the Code of Virginia (1950) as amended."

On April 7, 2021, the General Assembly repealed the marijuana possession statute, Code § 18.2-250.1.  2021 Va. Acts Spec. Sess. I chs. 550-51, cl. 3.  The repealing act stated that "the repeal of § 18.2-250.1 of the Code of Virginia shall become effective on July 1, 2021." *Id.* cl. 8.

Artis was tried by a jury from November 18-19, 2021.  At the end of the trial, the jury was instructed that it could find Artis guilty of the lesser-included offense of possession of marijuana under Code § 18.2-250.1 if it found that Artis possessed marijuana and the amount weighed more than one-half ounce but less than five pounds.  The jury found Artis guilty of possession of marijuana and was discharged.

At sentencing before the trial judge, the Commonwealth introduced for the first time, without objection, evidence showing that Artis had a prior conviction for marijuana possession in April 2014.  Over objection from defense counsel, the trial judge imposed an enhanced sentence of twelve months' imprisonment and a $2,500 fine based on Artis's prior marijuana possession conviction.  This appeal followed.

ANALYSIS

This case presents questions of statutory interpretation, which we review de novo. *Jordan v. Commonwealth*, 286 Va. 153, 156 (2013).

I

"The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force . . . and be the rule

of decision, except as altered by the General Assembly." Code § 1-200. The common-law rule of abatement was enunciated by our highest court in *Scutt v. Commonwealth*, 4 Va. 54 (1817):

> According to *Hale*, if an offence be made Treason or Felony, by Act of Parliament, and then the Act be repealed, the offences committed before such repeal, and the proceedings thereupon are discharged by such repeal, and cannot be proceeded upon after such repeal, unless a special clause in the Act of repeal be made, enabling such proceeding, after the repeal, for offences committed before.

*Id.* at 55-56 (citing 1 *Hale's* H.P.C. p. 291, 309). Applying the common-law rule of abatement, the Court in *Scutt* reversed the conviction of a defendant who was tried under a criminal statute that had been repealed prior to his trial. *Id.* at 57. Subsequently, in *Attoo v. Commonwealth*, 4 Va. 382, 383 (1823), and *Commonwealth v. Leftwich*, 26 Va. 657, 659 (1827), the Court reversed the convictions of defendants who were convicted under a criminal statute that had been repealed and replaced with a new statute containing a harsher penalty for the offense. The result in *Attoo* and *Leftwich* was a "technical" abatement that effectively resulted in a legislative pardon: the common-law rule prohibited prosecution under the repealed statute, and the constitutional prohibition against ex post facto laws prohibited prosecution under the new harsher statute.[1] By contrast, "[a] *nontechnical* abatement of prosecution resulted at common law when a statute was changed so that the conduct in question no longer was a crime." *United States v. Stephens*, 449 F.2d 103, 105 n.6 (9th Cir. 1971) (emphasis added).

Under the common law, the legislature could "save" a prosecution from abatement so long as it inserted "a special clause in the Act of repeal . . . enabling such proceeding, after the repeal, for offences committed before," *Scutt*, 4 Va. at 56, referred to as a "saving clause." This

---

[1] "In the United States, the constitutional prohibition against ex post facto laws meant that a defendant could not be charged under either law: the doctrine of abatement combined with the prohibition against ex post facto laws resulted in an effective pardon every time a penal statute was amended." Eileen L. Morrison, *Resurrecting the Amelioration Doctrine: A Call to Action for Courts and Legislatures*, 95 B.U. L. Rev. 335, 340 (2015).

method ultimately proved to be unsatisfactory, however, because "[w]ith numerous statutory changes, legislatures . . . often failed to include an express saving clause in the amended statute, resulting in the unanticipated triggering of the abatement doctrine."  S. David Mitchell, *In With the New, Out With the Old: Expanding the Scope of Retroactive Amelioration*, 37 Am. J. Crim. L. 1, 24 (2009).  Thus, "[a]s a way of preventing abatements of criminal prosecutions and other liabilities when legislatures failed to provide special savings clauses in the repealing legislation, state legislatures began . . . to adopt general savings statutes applicable thereafter to all repeals, amendments, and reenactments of criminal and civil liabilities."  *Holiday v. United States*, 683 A.2d 61, 66 (D.C. 1996).  These general saving statutes "shift[ed] . . . the legislative presumption from one of abatement unless otherwise specified to one of non-abatement in the absence of contrary legislative direction."  Comment, *Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation*, 121 U. Pa. L. Rev. 120, 127 (1972).

The Virginia general saving statute was first codified in Code tit. 9, ch. 16, § 18 (1849), and the original version is nearly identical to the version now codified in Code § 1-239.[2]  Code § 1-239, provides, in relevant part:

> No new act of the General Assembly shall be construed to repeal a former law, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture, or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed

[2] The 1849 version of the Virginia general saving statute provided, in relevant part:

> No new law shall be construed to repeal a former law, as to any offence committed against the former law, nor as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offence or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect[.]

The only notable difference between the original version and Code § 1-239 is that Code § 1-239 replaced the phrase "new law" with "new act of the General Assembly."

or done, or any penalty, forfeiture, or punishment so incurred, or any right accrued, or claim arising before the new act of the General Assembly takes effect[.]

In this appeal, Artis contends that his conviction for marijuana possession under Code § 18.2-250.1 is void ab initio because this code section was repealed prior to his conviction. He asserts that Code § 1-239 does not apply when the General Assembly performs an absolute and unqualified repeal of a criminal statute that decriminalizes an offense and that this Court should instead apply the common-law rule of abatement—in this case, a nontechnical abatement. In Artis's view, this common-law rule has not been abrogated entirely by Code § 1-239 and still operates in Virginia for nontechnical abatement. Artis further argues that the phrase "construed to repeal" in Code § 1-239 indicates that this code section applies only when it is ambiguous whether the General Assembly intended to repeal a statute. Since there is no ambiguity that the General Assembly intended to repeal Code § 18.2-250.1, Artis claims that Code § 1-239 does not apply to him.

We cannot agree. "Courts are not permitted to rewrite statutes. This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied." *Anderson v. Commonwealth*, 182 Va. 560, 566 (1944). "The plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." *Commonwealth v. Zamani*, 256 Va. 391, 395 (1998). "A statute is not to be construed by singling out a particular phrase; every part is presumed to have some effect and is not to be disregarded unless absolutely necessary." *Id.* "[W]e examine a statute in its entirety, rather than by isolating particular words or phrases." *Cummings v. Fulghum*, 261 Va. 73, 77 (2001). "The rules of statutory interpretation argue against reading any legislative enactment in a manner that will make a portion of it useless, repetitious, or absurd." *Jones v. Conwell*, 227 Va. 176, 181 (1984). "[E]very act of the legislature should be read so as to give reasonable

effect to every word and to promote the ability of the enactment to remedy the mischief at which it is directed." *Id.*

First, we hold that Code § 1-239 equally applies in circumstances where the General Assembly explicitly and unambiguously repeals a statute. The fatal flaw in Artis's argument regarding "construed to repeal" in Code § 1-239 is that it completely ignores the later phrase "in any way whatever to affect" in the statute. Under a proper reading of Code § 1-239, the word "construed" operates not only on "to repeal," but also operates on "in any way whatever to affect." To read Code § 1-239 otherwise would cause the word "to" in "in any way whatever *to* affect" to be superfluous and would render that entire phrase grammatically incorrect. The phrase "in any way whatever to affect" is also preceded by the disjunctive word "or," which signifies an alternative application for the word "construed" in the statute. Thus, when the General Assembly explicitly and unambiguously repeals a statute, that repeal shall not be "construed . . . in any way whatever to affect" any offenses, acts, penalties, forfeitures, punishments, rights, or claims under the former law.

Second, we hold that Code § 1-239 equally applies in circumstances where the General Assembly performs an absolute and unqualified repeal of a criminal statute that decriminalizes an offense. The language in Code § 1-239 is broad and sweeping, encompassing every "new act of the General Assembly," and applying, among other things, to every "offense committed," every "act done," and every "claim arising" under the former law. No language in Code § 1-239 clearly states or implies that it does not apply in circumstances where the General Assembly performs a full repeal of a criminal statute, nor does any language in Code § 1-239 indicate that it was not meant to apply where the General Assembly makes certain conduct no longer a crime. And it is axiomatic that the General Assembly's repeal of a statute is an "act" of the General Assembly, subject to the requirements of Code § 1-239. *See Gionis v. Commonwealth*, 76

- 6 -

Va. App. 1, 9-10 (2022) ("[W]e conclude that a 'new act of the General Assembly' under Code § 1-239 does include a legislative action that simply repeals a statute in full."). Therefore, the General Assembly's absolute and unqualified repeal of a criminal statute that decriminalizes an offense is not exempt from the requirements of Code § 1-239.

Finally, we hold that Code § 1-239 has abrogated the common-law rule of abatement in its entirety. "[A] statutory provision will not be held to change the common law unless the legislative intent to do so is plainly manifested." *Herndon v. St. Mary's Hosp., Inc.*, 266 Va. 472, 476 (2003). "A statutory change in the common law is limited to that which is expressly stated or necessarily implied because the presumption is that no change was intended." *Boyd v. Commonwealth*, 236 Va. 346, 349 (1988). "When an enactment does not encompass the entire subject covered by the common law, it abrogates the common-law rule only to the extent that its terms are directly and irreconcilably opposed to the rule." *Id.* "[T]he Legislature is presumed to have known and to have had the common law in mind in the enactment of a statute." *Wicks v. City of Charlottesville*, 215 Va. 274, 276 (1974). "The statute must therefore be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law." *Id.*

As noted in *Ruplenas v. Commonwealth*, 221 Va. 972, 975-77 (1981), the Virginia general saving statute was "intended to change the common-law rule of abatement" and "was an attempt to change the results enunciated in the cases of [*Leftwich*], [*Attoo*], and [*Scutt*]." There is no question that the General Assembly was aware of the common-law rule of abatement when it originally enacted the general saving statute, nor is there any question that the statute was specifically designed to combat the inherent problems associated with the common-law rule. And the broad, all-encompassing language of the general saving statute makes plainly manifest

that the legislative intent in enacting the statute was to ensure that there would be no circumstance under which the common-law rule of abatement could ever come into operation again. Code § 1-239 is completely incompatible with the common-law rule in all its forms, including both technical and nontechnical abatement, and there is no avenue by which any aspect of the common-law rule can be read into or harmonized with Code § 1-239. Consequently, the common-law rule of abatement is no longer law in Virginia.

The General Assembly's absolute repeal of Code § 18.2-250.1 contained no express language stating that prosecutions still pending under this statute would be abated. The repeal also stated that it would become effective on July 1, 2021. 2021 Va. Acts Spec. Sess. I, chs. 550-51, cl. 8. Accordingly, pursuant to Code § 1-239, Artis's conviction for marijuana possession committed on February 25, 2020 and indicted on November 4, 2020 is not void ab initio and will be affirmed.

## II

At the time of Artis's current offense for marijuana possession, Code § 18.2-250.1 provided that "[a]ny person who violates this section is guilty of a misdemeanor and shall be confined in jail not more than 30 days and fined not more than $500, either or both; any person, upon a second or subsequent conviction of a violation of this section, is guilty of a Class 1 misdemeanor." Artis asserts that the trial court's imposition of an enhanced sentence of twelve months' imprisonment and a $2,500 fine is void ab initio because his indictment did not charge him with a second or subsequent offense under Code § 18.2-250.1, nor did the Commonwealth prove his prior marijuana possession conviction at trial to the jury. In response, the Commonwealth contends that Artis's prior marijuana conviction was a "sentencing aggravator" that was not required to be charged in his indictment or proven to the jury.

In *Pierce v. Commonwealth*, 2 Va. App. 383, 386 (1986), we specifically held that "in order for the Commonwealth to take advantage of the enhanced punishment provided in [Code § 18.2-250.1], it *must prove* a second or subsequent conviction for unlawful possession of marijuana under Code § 18.2-250.1(A)." (Emphasis added). This Court did not elaborate on the basis for this holding, including whether a prior conviction must be proven as an element of the offense or as a sentencing enhancement. Nevertheless, our holding in *Pierce* is the controlling precedent on this issue and is fully dispositive of Artis's second assignment of error.[3] *See*

---

[3] *Pierce*, though controlling, falls short of illuminating. In its absence, however, we face something of a lacuna in the law. "Though the common law did not create recidivist crimes as such, it did develop a well-recognized order of proof in such cases." *Washington v. Commonwealth*, 46 Va. App. 276, 278 (2005) (en banc), *aff'd*, 272 Va. 449 (2006). Specifically, this Court has acknowledged that "if a defendant is charged with violating a recidivist statute, proof of the defendant's prior felony convictions is admissible as a 'required predicate for enhanced punishment.'" *Id*. at 289 (Humphreys, J. concurring) (quoting *Berry v. Commonwealth*, 22 Va. App. 209, 213 (1996)).

In 1819, the General Assembly enacted amendments to the Virginia Penitentiary Act of 1796 which codified judicial treatment of recidivist procedure in the Commonwealth. Approximately one century later, in 1918, the General Assembly amended the Virginia Penitentiary Act and renamed and reframed recidivist procedure in the Virginia Habitual Criminal Act. This subsequent Act remained the "law of the land" as it were, for many years, until it was repealed in its entirety in 1982. Since that repeal, the General Assembly has not addressed recidivist procedure in sweeping legislation, instead only enacting crime-specific recidivism statues. *Id.* at 281 n.3. And after *Pierce* was decided in 1986, the General Assembly did not revise the recidivist language we relied upon in that case until it completely decriminalized the possession of marijuana in 2020.

Presently, not all criminal statutes that address recidivist offenses set forth a "pleading and proof procedure," nor do all statutes that articulate a procedure do so uniformly. *See*, *e.g.*, Code § 18.2-248 (possession with intent to distribute), Code § 18.2-57.2 (assault and battery against a family or household member), Code § 18.2-311.2 (third conviction of firearm offenses) (all specifically requiring that the fact of prior conviction be "alleged in the warrant, indictment or information"); Code § 18.2-270 (DUI) (presenting four different sentencing options that each require proof of *both* one or more prior convictions *and* that those convictions occurred *within a specific time frame,* with each option carrying a different sentencing range); Code § 18.2-46.3:1 (third or subsequent conviction of criminal street gang crimes), Code § 18.2-53.1 (use or display of a firearm in committing a felony) (both statutes specifying sentence enhancement as part of a separate and distinct offense).

The resulting panoply of procedures leaves in doubt the legislative intent with respect to the procedural implementation of enhanced punishment provisions in various statutes. Although not foreclosing the possibility that other statutory or common-law considerations may justify otherwise, United States Supreme Court jurisprudence specifically exempts a prior conviction as

*Johnson v. Commonwealth*, 252 Va. 425, 430 (1996) ("[A] decision of a panel of the Court of Appeals becomes a predicate for application of the doctrine of stare decisis until overruled by a decision of the Court of Appeals sitting en banc or by a decision of [the] [Virginia Supreme] Court."). And "[i]n Virginia, the doctrine of stare decisis is more than a mere cliché." *Hardesty v. Hardesty*, 40 Va. App. 663, 670 n.2 (2003) (en banc) (quoting *Selected Risks Ins. Co. v. Dean*, 233 Va. 260, 265 (1987)). The doctrine assures "'consistent, predictable, and balanced application of legal principles,'" and affirms to "'the public that an appellate court's judgments are not arbitrary and that the court is controlled by precedent that is binding without regard to the personal views of its members.'" *Id*. (first quoting *Dean.*, 233 Va. at 260; and then quoting *Newman v. Erie Ins. Exch.*, 256 Va. 501, 510 (1998) (Compton, J., joined by Carrico, C.J., dissenting)). Ever mindful of the limits of our authority, we proceed with solicitude for the doctrine of stare decisis and the ends it serves.

Accordingly, the question of whether a prior conviction must be treated as if it is an element of the underlying offense or a mere sentencing enhancement that frames the available sentencing options for a trial court is not one we must answer here. Our present inquiry begins and ends with the application of the precedent in *Pierce* to the record before us, where it is clear that the predicate conviction upon which the trial court sought to impose the enhanced punishment was neither alleged nor proven.

Consequently, the trial court erred by imposing an enhanced sentence of twelve months' imprisonment and a $2,500 fine. Accordingly, the sentencing order is void ab initio and will be

---

a *constitutionally* required fact that must be pled in a charging instrument and found by a factfinder at trial. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000), and cases applying it. Therefore, ultimately resolving and clarifying questions with respect to the use of prior convictions as sentencing enhancements is properly the province of the General Assembly.

vacated, and the case will be remanded for resentencing consistent with the penalty range for first-offense marijuana possession under Code § 18.2-250.1.

## CONCLUSION

For the foregoing reasons, Artis's conviction for marijuana possession under the now-repealed Code § 18.2-250.1 is affirmed, the sentencing order is vacated, and the case is remanded for resentencing consistent with the penalty range for first-offense marijuana possession under Code § 18.2-250.1.

*Affirmed in part, reversed in part, and remanded.*